FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 09 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
CRYSTAL D. LEWIS,

                Plaintiff,

      — against —

NEW YORK CITY POLICE DEPARTMENT
and COMMISSIONER RAYMOND KELLY,

              Defendants.
------------------------------------------------------X

**MEMORANDUM AND ORDER**

09-cv-5472 (SLT) (CLP)

**TOWNES, United States District Judge:**

        Crystal D. Lewis ("Plaintiff") brings this action against the New York City Police Department (the "NYPD") and Commissioner Raymond Kelly (the "Commissioner") (together, "Defendants"), alleging that Defendants discriminated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000-e et. seq. and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et. seq., as well as discriminated and retaliated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq. and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et. seq. Defendants have moved for summary judgment, alleging that some of Plaintiff's claims are time-barred or unexhausted. With regard to Plaintiff's remaining claims, Defendants argue that Plaintiff has not met her burden. For the reasons that follow, the court grants Defendants' motion in its entirety.

## I. STANDARDS OF REVIEW

        Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV .P. 56(a). In deciding a summary judgment motion, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Additionally, "[a] *pro se* party's submissions are to be read liberally, a requirement that is especially strong in the summary

judgment context, where a *pro se* plaintiff's claims are subject to a final dismissal." *Ferguson v. Bizzario*, 2010 WL 4227298, at *3 (S.D.N.Y. Oct. 19, 2010).

Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Cetotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the non-moving party must assert specific facts demonstrating that there is a genuine issue of fact. *Anderson*, 477 U.S. at 250. Importantly, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, to defeat a summary judgment motion there must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 411 U.S. at 248–49.

## II. BACKGROUND

The parties do not dispute the following facts which are construed in a light most favorable to Plaintiff, the non-moving party. On November 14, 1980, Plaintiff began her employment with the NYPD as a police administrative aide ("Police Aide"). (Defendants' Statement of Facts ("Defs. SOF") ¶ 2; Plaintiff's Deposition ("Pl. Dep.") at 11.) As a Police Aide, Plaintiff rotated daily among five different clerical posts.[1] (Defs. SOF ¶ 3; Pl. Dep. at 12, 16, 18.) Plaintiff worked as a Police Aide at the Brooklyn Court Section of the NYPD until her first termination on October 22, 2007. (Defs. SOF. ¶ 4.) Following her reinstatement, Plaintiff worked as a Police Aide at the Brooklyn Police Tow Pound, where she remained until her second termination on November 13, 2009. (Defs. SOF ¶ 5.)

### A. Plaintiff's FMLA Leave

Plaintiff applied for and received FMLA leave in 2003, although the record does not

---

[1] Plaintiff testified that the five posts were: (1) fax logs, whereby an employee would log packages as they came in and also send packages out to court; (2) breakdown, whereby an employee would break the packages down; (3) PF 10, or "crims," whereby an employee would "check the wraps,"; (4) fax machine; and (5) a post whereby an employee would log the packages that were sent down to court. (Pl. Dep. at 16, 18.)

appear to indicate the medical reason. (Defs. SOF ¶ 31.) In March of 2004, Plaintiff again requested FMLA leave due to her medical condition. (Id. ¶ 32.) Lieutenant Seth Schoen reviewed that request and the supporting documentation and approved FMLA leave for one to three days per month for a period of twelve months to commence March 18, 2004. (Id.) Schoen indicated, however, that because Plaintiff was already in Step IV, she must follow civilian employee sick procedures for any sick leave not falling under the approved leave.[2] (Id.)

At some point thereafter, although it is not clear precisely why or when, Edward Liburd, a wage and hour investigator, conducted an investigation to determine whether Schoen's division was in compliance with the FMLA as it applied to Plaintiff. (Ex. Q Attached to Defendants' Motion for Summary Judgment ("Defs. MSJ").) In a letter dated July 23, 2004 Liburd indicated that the investigation had been concluded and wrote to Schoen to notify him of the findings. Liburd noted that in discussions with Schoen in June of 2004, Schoen had "expressed a concern regarding [Plaintiff's] leave exceeding the three days per month." (Id.) Liburd acknowledged that the "number of leave days taken [by Plaintiff] to date is unknown," but concluded that given Plaintiff's five day workweek, "extending the maximum number of days to be taken in a month to five would be appropriate," and that the FMLA permits "a maximum of five days per month, for a total of 60 days in a twelve month period." (Id.) He also indicated that Plaintiff "continues to document and express a concern for having her leave be[ ] used as a negative factor in employment actions, specifically with respect to her performance evaluations." (Id.) Liburd expressed no opinion on this, and merely concluded that Schoen's division was in "compliance with [the FMLA] as long as [Schoen] do[es] not use any employees' Family Medical Leave as a negative factor in employment actions." (Id.)

---

[2] Step IV refers to the highest level of the NYPD's Absence Control Program. An employee is designated as Step IV when she has five undocumented absences before or after a regular day off, holiday, or vacation or a total of six undocumented absences. Once an employee is designated as Step IV, she must complete a six-month period without reporting sick more than two times in order to be removed from the Step IV level of the program. (*See* Ex. L Attached to Defendants' Motion for Summary Judgment ("Defs. MSJ").)

In a letter dated September 24, 2004, an assistant deputy commissioner with the Legal Bureau addressed the issue left open by Liburd's letter – the number of days of leave Plaintiff had claimed. (Ex. R Attached to Defs. MSJ.) In its response to a request by the command at the Brooklyn Court Section "for clarification of the [FMLA] as it applies to [Plaintiff]," an assistant deputy commissioner at the Legal Bureau concluded that, notwithstanding Schoen's approval of Plaintiff's request for FMLA through March 17, 2005, upon review of Plaintiff's timekeeping records and the relevant statutory provisions, Plaintiff "is not entitled to the protections of FMLA coverage at this time." (Id.) That conclusion was based on the FMLA's requirement that an employee have worked 1,250 hours during the 12-month period immediately preceding the requested leave, and that the record indicated that, as of September 23, 2004, Plaintiff had worked only 945.02 hours since September 2003. (Id.) The Legal Bureau noted that Plaintiff would become eligible for FMLA leave "if/when she meets the 1,250 hour-threshold." (Id.) Plaintiff was notified in-person of the Legal Bureau's determination and provided with several blank re-certification forms should she decide to re-apply for FMLA leave. (Defs. SOF ¶ 37; Ex. S Attached Defs. MSJ.)

On November 13, 2004, Plaintiff again requested FMLA leave. Her request was denied because she had not signed and dated the required Certification of Healthcare Provider ("CHP") form. (Defs. SOF ¶ 38.) On November 16, 2004 Plaintiff's supervisor, Principal Administrative Aide ("Principal") Bonnie Dozier met with Plaintiff and instructed her to sign and date the CHP, but Plaintiff refused. (Id. ¶ 39.) Plaintiff states that she did not sign the form because she believed the portion Dozier asked her to sign pertained only to people seeking FMLA leave to care for a family member and not for individuals who needed the leave to take care of themselves. (Plaintiff's Statement of Facts ("Pl. SOF") ¶ 38.) In any event, Plaintiff subsequently requested FMLA leave on several occasions during the remainder of 2004 and at various times in 2005, as well as once in 2006 and again in 2007, and was denied each time for

4

failing to meet the 1,250 hour threshold.[3] (Defs. SOF ¶¶ 40-50.) Plaintiff does not claim that Defendants denied her FMLA leave in 2008 or 2009. (Pl. SOF ¶ 50.)

## B. Plaintiff's First Complaint to the NYPD Office of Equal Employment Opportunity

On March 31, 2004, Plaintiff, following her request for FMLA leave, appeared in-person at the NYPD Office of Equal Employment Opportunity ("OEEO") to complain about her supervisor, Principal Dozier. (Ex. Z Attached to Defs. MSJ.) Plaintiff alleged that she was given a below standards evaluation due to absences that she was entitled to take under the FMLA. (Id.) On April 19, 2004 Plaintiff filed with the OEEO a written complaint against Dozier alleging the same. (Id.) In her written complaint, Plaintiff also complained that Schoen spoke to her physician about her diagnosis and treatment and claimed that Schoen forced her physician to re-write one of his medical notes. (Id.) In an OEEO confidential report dated October 1, 2004, the Executive Officer of the OEEO indicated that his office investigated Plaintiff's matter, interviewed Dozier, reviewed Plaintiff's personnel file and exonerated Dozier. (Id.) Specifically, the OEEO found that Dozier "correctly cited [Plaintiff's] sick record and its effect on her overall performance." (Id.) Plaintiff was informed of the OEEO's decision on November 30, 2004. (Id.)

## C. Plaintiff's Request for Accommodation

When Plaintiff began work at the Brooklyn Court Section she worked a shift, or tour, of 4:00 p.m. to 12:00 a.m., deemed the "night tour" or "evening tour." (Ex. B Attached to Defs. MSJ at 14.) At some point, Plaintiff's tour was changed so that she worked from 3:00 p.m. to 11:00 p.m. (Id. at 14, 82.) While working on the night tour, Plaintiff alleges that she was forced

---

[3] The court notes that the record is less clear regarding Plaintiff's 2006 request for FMLA leave and Defendants' subsequent denial of that request. Although Plaintiff testified that she applied for FMLA leave in 2006, there does not appear to be any such request or denial of such request in the record. In any event, the court credits as it must Plaintiff's assertion that she applied for FMLA leave during this time and notes that Defendants maintain that Plaintiff would have been denied any such request as she did not meet the requisite 1,250 hour threshold for this period either.

to work overtime and threatened with suspension if she refused, despite medical reasons that prevented her from doing so. (Complaint at 2-3.)

As a result of having to work overtime, on January 7, 2005, Plaintiff submitted a Request for a Reasonable Accommodation form. (Defs. SOF ¶ 60.) In that form, Plaintiff requested that she work "no O[ver]T[time]" due to the fact that she has "FMLA for several conditions and a doctor's note requesting [that she is] not to be given [overtime] to help with [her] recovery." (Ex. BB Attached to Defs. MSJ.) Plaintiff also referred to her then pending OEEO complaint filed in March of 2004. (Id.) Plaintiff's request for accommodation was ultimately denied because Plaintiff refused to submit to an evaluation by an NYPD physician in order to "ascertain the extent of [her] disability, and [determine] how the [NYPD] can best accommodate [her] needs." (Id.) Nevertheless, in 2005 or 2006, at Plaintiff's request, she was transferred to the "day tour," which ran from 7:00 a.m. to 3:00 p.m. (Id. at 15.) Plaintiff further testified that although the NYPD waited two years before granting her this request, once she was transferred to the day tour she was no longer forced to work any overtime. (See id. at 15, 82, 85 (testifying that "nobody kind of forced me [to work overtime] like they were doing on the night tour" and indicating that while on the day tour, if a supervisor asked Plaintiff to work overtime and she said no, "they would go ask somebody else.").) Notwithstanding Plaintiff's testimony that she was not required to work overtime since 2006 at the latest, on January 12, 2007, she submitted a second Request for a Reasonable Accommodation form asking that she be exempted from any overtime work. (Ex. EE Attached to Defs. MSJ.)

D. Plaintiff's First Charge of Discrimination with the U.S. Equal Employment Opportunity Commission

On May 5, 2005, Plaintiff, prior to her first termination, filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that she was discriminated against on the basis of her disability and her age as well as retaliated against during the period of March 26, 2004 through April 1, 2005. (Ex. HH Attached to Defs. MSJ.)

Plaintiff alleged that she was asked about her age "every time [her supervisors] start about overtime," asserting that her supervisors state that she is "too old to keep giving them a problem when they tell [her she has] to [work] overtime." (Id.) Plaintiff also complained that she was not granted the change of tour she requested. (Id.) Finally, Plaintiff alleged that the negative evaluations she received from Dozier were in retaliation for Plaintiff having filed a complaint against her. (Id.) On September 16, 2005, the EEOC issued a Dismissal and Notice of Rights authorizing Plaintiff to commence a lawsuit. (Unnumbered Exhibit Attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp.").) Plaintiff opted not to file a lawsuit at this time.

E. Plaintiff's First Termination

On April 5, 2005, in the midst of Plaintiff's ongoing requests for FMLA leave and accommodation, the NYPD preferred a disciplinary charge and specification against Plaintiff for her failure to perform ordered overtime. (Defs. SOF ¶¶ 6-7.) On April 20, 2005, the NYPD preferred a second disciplinary charge and specification against Plaintiff because she: (1) failed to submit required medical documentation for absences on sixteen days in 2004, (2) failed to properly process warrant checks on two occasions; and (3) was absent from an assignment to perform a tour without permission or police necessity. (Id. ¶ 8.) On April 25, 2005, Plaintiff was relieved from her suspension and restored to duty. (Id. ¶ 7.)

On April 23, 2007, following a December 18, 2006 administrative hearing at which Plaintiff testified, Assistant Deputy Commissioner of Trials Robert W. Vinal ("Assistant Deputy Commissioner Vinal") issued a memorandum, finding Plaintiff guilty of all charges against her. (Id.) After examining Plaintiff's performance record, which revealed two prior disciplinary convictions, and in accordance with his findings of guilt, Assistant Deputy Commissioner Vinal recommended that Plaintiff "forfeit the 24 days she served on suspension regarding [her failure to perform the ordered overtime], and that she forfeit six vacation days . . . for a total forfeiture of 30 days." (Id. at 17; Defs. SOF ¶ 11.) On October 22, 2007, the Commissioner reviewed

Assistant Deputy Commissioner Vinal's memorandum, approved the findings, but declined to adopt the recommended penalty and instead terminated Plaintiff. (Defs. SOF ¶¶ 12-13.)

Plaintiff subsequently appealed her termination to the New York City Civil Service Commission (the "Commission"), which, following a hearing, issued a decision on April 1, 2008. The Commission concurred with Assistant Deputy Commissioner Vinal's findings that Plaintiff was guilty of all of the charges, but, noting Plaintiff's long tenure and her "minor disciplinary history," modified the penalty "to a suspension of time served from the date of [Plaintiff's] dismissal to the date of [its] determination" and ordered that Plaintiff "be restored to her position within 15 days from [its] determination." (Id. ¶ 14; Ex. H Attached to Defs. MSJ.) Plaintiff returned to work on August 18, 2008 at the Brooklyn Police Tow Pound. (Defs. SOF ¶ 15.)

F. Plaintiff's Second Complaint to the Office of Equal Employment Opportunity

On June 29, 2009 Plaintiff filed a complaint alleging that she was being harassed due to her disability by Traffic Manager Audrey Williams and Principal Iris Witherspoon, both of the Traffic Control Unit. (Ex. AA Attached to Defs. MSJ.) Specifically, Plaintiff alleged that while working at the Brooklyn Police Tow Pound, she had been given a poor evaluation based on her sick record, despite that she suffers from illnesses and that her employer should not be able to use her FMLA sick leave against her. (Id.) No action was taken on Plaintiff's complaint because Plaintiff had appealed the evaluation and, on August 3, 2009, she was informed by Deputy Commissioner Ziegler that she must exhaust that appeals process before any investigation could proceed. (Id.)

G. Plaintiff's Second Termination

On June 13, 2007, prior to Plaintiff filing her second OEEO complaint, and while she was awaiting the Commissioner's decision on Assistant Deputy Commissioner Vinal's recommendation regarding the April 5, 2005 and April 20, 2005 charges against her, the NYPD preferred new disciplinary charges against Plaintiff. (Id. ¶ 21.) Based on more recent evaluations from Plaintiff's tenure at the Brooklyn Court Section, Plaintiff was now charged with:

8

(1) incompetence due to ratings of "Below Standards" spanning three evaluation periods, beginning September 16, 2005 and ending on March 15, 2007, and (2) excessive absence due to absences on "56 occasions during an 18 month period beginning September 2005 to March 2007, for a total of 206 days" while she had been in Step IV. (Ex. K Attached to Defs. MSJ; Defs. SOF ¶¶ 21-22.) These charges were unrelated to the negative evaluations Plaintiff received while at the Brooklyn Police Tow Pound and that served as the basis for her second OEEO complaint. (See Ex. M Attached to Defs. MSJ.)

Following a May 20, 2009 administrative hearing at which Plaintiff testified, Assistant Deputy Commissioner of Trials David Weisel ("Assistant Deputy Commissioner Weisel") issued a memorandum, finding Plaintiff guilty of both charges against her. (Defs. SOF ¶ 24.) After examining Plaintiff's performance record and noting that the "instant charges of incompetence are more serious than those in [Plaintiff's] previous trial," Assistant Deputy Commissioner Weisel recommended that Plaintiff's employment be terminated. (Id. ¶ 25; Ex. M Attached to Defs. MSJ at 635-36.) On October 27, 2009, the Commissioner reviewed Assistant Deputy Commissioner Weisel's memorandum, approved the findings, but declined to adopt the recommended penalty. (Defs. SOF ¶ 27.) Instead, the Commissioner directed that Plaintiff be offered an opportunity to immediately retire from the NYPD and that, if she did not wish to retire, she be summarily dismissed. (Id.) Plaintiff ostensibly did not wish to retire and, on November 13, 2009, the Commissioner directed that she be dismissed from the NYPD. (Id. ¶ 29.)

H. Plaintiff's Second Charge of Discrimination With the U.S. Equal Employment Opportunity Commission

On October 20, 2008, following Plaintiff's hearing on the NYPD's preferral of the second set of charges against her, the EEOC received Plaintiff's second charge of discrimination alleging that Defendants discriminated and retaliated against her. (Ex. II Attached to Defs. MSJ.) The EEOC issued a Dismissal and Notice of Rights and, on December 15, 2009,

following her second termination, Plaintiff commenced the instant action.

### III. DISCUSSION

As is evident from the background just described, Plaintiff has traveled a somewhat long and winding road to arrive at the courthouse door and Plaintiff's complaint and the papers submitted in opposition to Defendants' motion require the court to navigate a veritable maze of claims, assertions, and allegations. Briefly summarized, Plaintiff complains of the following: (1) that Defendants interfered with her rights under the FMLA as well as retaliated against her for filing for leave under the FMLA for the time period of 2004 through 2007; (2) that Defendants impermissibly denied her requests for a reasonable accommodation; (3) that Defendants negatively evaluated her as a result of her absences and unlawfully terminated her on October 22, 2007 in violation of her statutory rights under the ADA and Title VII; and (4) that Defendants negatively evaluated her as a result of her absences and unlawfully terminated her on November 13, 2009 in violation of her rights under the ADA and Title VII.

As an initial matter, the NYPD is not a suable entity. Governmental entities "may not be sued in an individual capacity absent express consent from the state," and the "the New York City Charter expressly mandates that 'actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency.'" *Warheit v. City of New York*, 2006 WL 2381871, at *13 (S.D.N.Y. Aug. 15, 2006) (quoting N.Y. City Charter § 396). As a result, summary judgment is appropriate as to any claims against the NYPD. Further, the court grants Defendants' motion for summary judgment to the extent Plaintiff asserts an ADA claim against Commissioner Kelly in his individual capacity. *See Farid v. Bouey*, 554 F. Supp. 2d 301, 325 (N.D.N.Y. 2008) (noting that the ADA makes no provision for individual capacity suits against state officials).

### A. Several of Plaintiff Claims Are Untimely

To maintain a timely action under 42 U.S.C. § 2000e–5, a plaintiff must comply with three requirements: (1) file a timely charge with the EEOC, (2) receive an EEOC right-to-sue

letter, and (3) file an action within 90 days of receipt of that letter. *See Gallo v. Glen Cove City Sch. Dist.*, 2009 WL 1161818, at *4 (E.D.N.Y. Apr. 29, 2009) (citation omitted). With respect to the timing of the EEOC charge, "it is well-settled that, prior to filing a claim in federal court pursuant to the ADA . . . or Title VII, a plaintiff must institute proceedings with a state or local agency within 300 days of the alleged act of discrimination." *Id.* (citation omitted). These statutory filing periods "act as a 'statute of limitations' and a failure to timely file a charge acts as a bar to a plaintiff's action." *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, 2007 WL 259937, at *6 (S.D.N.Y. Jan. 29, 2007) (citing *Hill v. Citibank Corp.*, 312 F.Supp.2d 464, 472 (S.D.N.Y. 2004)). The period begins to run for each discrete discriminatory or retaliatory act when each act occurs. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

As indicated, Plaintiff has filed two EEOC charges. In Plaintiff's first EEOC charge, which was filed on May 5, 2005 and encompassed claims comprising Plaintiff's first OEEO charge against Dozier, Plaintiff complained that she received negative evaluations as a result of her taking leave to which she was entitled under the FMLA, that she was being forced to work overtime, and that she was being denied her request for a reasonable accommodation, *i.e.* a change of tour and a provision that she not be required to work overtime. (Ex. HH Attached to Defs. MSJ.) She also alleged that her supervisors made inappropriate comments about her age. (Id.) On September 16, 2005, the EEOC issued a Dismissal and Notice of Rights informing Plaintiff that her "lawsuit must be filed <u>WITHIN 90 DAYS</u> of [her] receipt of this Notice; or your right to sue based on this charge will be lost." (Unnumbered Exhibit Attached to Pl. Opp. (emphasis in original).) As it is undisputed that Plaintiff did not file her lawsuit within the required ninety days, these claims are accordingly untimely. Moreover, Plaintiff testified that she has not worked overtime since 2005 or 2006, when she was transferred to the day tour. (Pl. Dep. at 15, 82, 85.) Thus, Plaintiff cannot rely on her second EEOC charge filed on October 20, 2008 to resurrect these claims, as any alleged incidents of discrimination or retaliation related to Plaintiff's complaints regarding her negative evaluations in 2003, her

having to work overtime and/or the denial of her transfer to the day tour all occurred well beyond the 300 day deadline for filing an EEOC charge related to these claims. Indeed, to the extent Plaintiff raises any claims of discrimination that accrued before December 25, 2007 – 300 days before she filed her October 20, 2008 EEOC charge – such claims are untimely and the court need not consider them. *See Gallo*, 2009 WL 1161818 at *4. Finally, because Plaintiff was first terminated on October 22, 2007, any challenge to that termination on the basis of discrimination would have had to have been raised in an EEOC charge filed within 300 days of the termination, or by August 11, 2008. As Plaintiff filed no such charge, any challenge to Plaintiff's first termination is also untimely. *See id.*

B. Plaintiff's Claim of FMLA Interference Is Also Untimely

To establish a *prima facie* claim for FMLA interference, a plaintiff must demonstrate that: 1) she was an eligible employee under the FMLA; 2) the defendant was an employer under the FMLA; 3) she was entitled to leave under the FMLA; 4) she gave notice to the defendant of her intention to take leave; and 5) the defendant denied her rights to which she was entitled by the FMLA. *Brown v. Pension Bds.*, 488 F.Supp.2d 395, 408 (S.D.N.Y. 2007).

The statute of limitations for most FMLA claims is two years. 29 U.S.C. § 2617(c)(1). Plaintiff commenced this action on December 15, 2009. Applying the typical statute of limitations period, the court concludes that Plaintiff's claims for denial of FMLA leave that occurred *prior* to December 15, 2007 are necessarily untimely. Here, Plaintiff has acknowledged that she does not claim any denial of FMLA leave for 2008 or 2009. (Pl. SOF ¶ 50.) Moreover, the record indicates that Plaintiff's last request for FMLA leave was on March 19, 2007, which was denied on September 19, 2007; Plaintiff's December 17, 2009 complaint filed here is therefore two months past the statutory deadline and untimely.

To be sure, a plaintiff may be entitled to a three year statute of limitations upon a showing that the employer's alleged FMLA violations were willful. *See* 29 U.S.C. § 2617(c)(2). The Second Circuit has advised that, although the term "willful" is not specifically defined in the

12

FMLA, the Supreme Court's definition of "willful" for purposes of the Fair Labor Standards Act applies to the FMLA. *See Porter v. New York Univ. Sch. of Law*, 392 F.3d 530, 531-32 (2d Cir. 2004) (per curiam). Thus, an employer acts willfully when he or she "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FMLA]." *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Moreover, "[i]f an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful . . . . If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then . . . it should not be . . . considered [willful.]" *Id.* (quoting *McLaughlin*, 486 U.S. at 135 n. 13) (alterations in original)).

Here, Defendants responded individually to each of Plaintiff's requests for FMLA leave, noting each time its justification for denying her request (either because Plaintiff refused to submit a complete medical certification or because Defendants did not believe that Plaintiff had worked the requisite hours to be eligible for FMLA leave). Moreover, Plaintiff has proffered no evidence and points to nothing in the record that even suggests that Defendants' denial of her requests for FMLA leave was reckless. To the contrary, Plaintiff acknowledges that one of the medical certifications was incomplete and Defendants have submitted uncontested attendance records to substantiate their belief that Plaintiff had not worked the requisite number of hours to be deemed eligible for FMLA leave. The court therefore applies the two year statute of limitations to Plaintiff's claim of FMLA interference and finds her claims untimely.[4]

---

[4] Notwithstanding this determination, the court finds that Plaintiff's 2006 and 2007 requests for FMLA leave are timely as to her FMLA retaliation claim, as at least one court has found that "a claim of retaliation [under the FMLA] is certainly a 'willful' violation and may be subject to the three-year statute of limitations." *Cinelli v. Oppenheim-Ephratah Cent. Sch. Dist.*, 2008 WL 111174, at *6 (N.D.N.Y. Jan. 7, 2008). The court therefore more fully considers this claim below.

13

C. Summary Judgment is Warranted as to Plaintiff's Claims of Discrimination Pursuant
to Title VII and the ADA and Retaliation Pursuant to the ADA and the FMLA[5]

Plaintiff has also alleged claims of discrimination under Title VII and the ADA, as well as
retaliation under the ADA and the FMLA. Such claims are analyzed under the burden-shifting
framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See
Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). Under the *McDonnell Douglas*
burden-shifting framework:

> [P]laintiff bears the initial burden of proving by a preponderance of
> the evidence a prima facie case of discrimination. The burden of
> production then shifts to defendants, who must offer through the
> introduction of admissible evidence a non-discriminatory reason for
> their actions that, if believed by the trier of fact, would support a
> finding that unlawful discrimination was not a cause of the disputed
> employment action. Plaintiff then must show that the proffered
> reason was merely a pretext for discrimination, which may be
> demonstrated either by the presentation of additional evidence
> showing that the employer's proffered explanation is unworthy of
> credence, or by reliance on the evidence comprising the prima facie
> case, without more.

*Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent
Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999) (internal quotations and citations omitted).

1. Plaintiff's Claims of Discrimination Pursuant to the ADA and
Retaliation Pursuant to the ADA and the FMLA

Plaintiff alleges that she faced discrimination on account of her disability. To establish a
*prima facie* case of discrimination under the ADA, a plaintiff must show by a preponderance of

---

[5] Plaintiff initially included an ADEA claim as well, but acknowledged that she "did not
check age in [her second EEOC charge] and indicated that in light of Defendants' exhaustion
argument, she would agree to dismissal of the claim. (Pl. Opp. at 12.) The court has also
independently reviewed this claim and notes that the only evidence in the record regarding this
claim is Plaintiff's testimony that she believed she had to work overtime because of her age
because when she would notify her supervisor that she could not work overtime, he would state
that she was too old to be giving him a problem about working overtime. (Ex. HH Attached to
Defs. MSJ.) Plaintiff acknowledged at her deposition, however, that she "never understood"
what relevance age had on her ability to work overtime and admitted that other than such stray
remarks, no actions were ever taken against her that she believed were discriminatory based
on her age. (Pl. Dep. at 90.) Accordingly, the court deems this claim withdrawn.

the evidence that (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of her disability. *See id.*

For purposes of summary judgment, Defendants primarily argue that Plaintiff cannot establish her *prima facie* case because in light of her excessive absences, she cannot demonstrate that she was qualified to perform the essential functions of her job. The court agrees. On her yearly performance evaluation for September 16, 2008 – September 15, 2009, Plaintiff was rated "below standards" due to her excessive absenteeism. (Ex. FF Attached to Defs. MSJ.) Plaintiff also received "below standards" reviews on her interim evaluations during this same period and until her second termination on November 13, 2009. (*See id.*) "Otherwise qualified" means that the individual "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Lyons v. Legal Aid Society*, 68 F.3d 1512, 1514 (2d Cir. 1995). "[T]he first step in determining [a] reasonable accommodation is 'identifying the barriers to job performance caused by the disability." *Buckley v. Consolidated Edison Co. of New York*, 155 F.3d 150, 157 (2d Cir. 1998) (en banc). Plaintiff bears the initial burden of suggesting a reasonable accommodation. *See D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998). However, a reasonable accommodation cannot "mean elimination of any of the job's essential functions." *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991).

Plaintiff has identified only two kinds of accommodation that she requested – that she not be required to work overtime and that she be transferred to the day tour – both of which were granted.[6] (*See* Pl. Dep. at 15, 82, 85.) Yet, despite the fact that, according to Plaintiff's

---

[6] The court notes that to the extent Plaintiff has alleged a claim based on any purported denial of her January 12, 2007 request for a reasonable accommodation that she not be required to work overtime, it finds such claim to be without merit given Plaintiff's own testimony that she was not required to work overtime at any point after 2006. (*See* Pl. Dep. at 15, 82, 85.)

testimony, her request for accommodation was granted in 2005 or 2006, Plaintiff's absenteeism continued unmitigated. Perhaps in recognition of this fact, Plaintiff now appears to suggest that because her subsequent absences were mostly supported by physicians' notes, a reasonable accommodation is to let her work whenever she is able. That is not what the law requires. To the contrary, "[c]ourts have consistently ruled that 'an employee cannot be considered otherwise qualified when she is unable to report to work at the time required, because she is not able to perform the essential functions of her job.'" *Bobrowsky v. New York City Bd. of Educ.*, 1999 WL 737919, at *4 (E.D.N.Y. Sept. 16, 1999) (quoting *Davis v. Bowes*, 1997 WL 655935, at *16 (S.D.N.Y. Oct. 20, 1997)); *see also Santiago v. Temple Univ.*, 739 F. Supp 974, 979 (E.D. Pa. 1990) (employee who could perform his duties admirably when at work was nonetheless not otherwise qualified due to his inability to reliably report to work). Indeed, courts have specifically noted that "[t]he ADA does not require employers to tolerate chronic absenteeism even when attendance problems are caused by an employee's disability." *Mescall v. Marra*, 49 F. Supp. 2d 365, 374 n.18 (S.D.N.Y. 1999) (alteration in original); *Pierce v. Highland Falls-Fort Montgomery Central Sch. Dist.*, 2011 WL 4526520, at * 5 (S.D.N.Y. Sept. 28, 2011) (noting that plaintiff's "persistent absence from work, alone, precludes him from being considered qualified under the ADA" even assuming that plaintiff's absences were a result of a recognized disability); *Aquinas v. Fed. Exp. Corp.*, 940 F. Supp. 73, 79 (1996) (finding that plaintiff's proposal for reasonable accommodation "amounts to a request for permission to work only when her illness permits," and that such request "necessarily undermines the policy of regular attendance that is essential to her job."); *id.* ("[A] disabled employee who cannot get to work as often as her employer requires is not 'otherwise qualified' for her job under the ADA, and her employer is not required to make allowances for her absenteeism.").

Here, the letters Plaintiff submitted referring to her physicians' notes suggest that Plaintiff's absences arose as a result of a variety of ailments, each of which, according to Plaintiff, potentially renders her unable to appear for work. (*See* Ex. M Attached to Defs. MSJ

(administrative decision indicating that Plaintiff testified at a hearing to using FMLA and sick leave on separate occasions due to stress, vertigo, dizziness caused by her medicine, irritable bowel syndrome, a stomach virus, influenza and strep throat, back pain and sciatica, diabetes and associated ailments, high blood pressure, insomnia, pain in her back and legs, a herniated disc, an infection on her foot, menorrhagia, and chronic conditions of hypertension, heart problems, and obesity).) Given the sporadic and unpredictable nature of Plaintiff's absences that arise from her multitude of medical issues, it is impossible for Defendants to know "from one day to the next, if [she] will even be reporting to work." *See Powers v. Polygram Holding, Inc.*, 40 F. Supp. 2d 195, 200 (S.D.N.Y. 1999). To be sure, the record indicates that Plaintiff submitted doctors' notes for most, though not all, of her absences. However, as Assistant Deputy Commissioner Weisel noted at Plaintiff's second hearing, while these notes "may indicate [her] sincerity, [they do] not change the fact that her absences make her incompetent to perform her work duties because she is not there to perform them and because it forces the [NYPD] to use other employees to do the work the [Plaintiff] would have done if present." (Ex. M Attached to Defs. MSJ.) Indeed, Defendants have submitted evidence demonstrating that Plaintiff was absent from work on 207 days over the course of 17 months, an absence rate of over 60% (207 absence days over 17 months with 20 workdays per month). In light of such an extensive record of absences and given the evidence in the record regarding the impact of Plaintiff's absences on her colleagues, the court finds that toleration of Plaintiff's excessive absences is not, as a matter of law, a reasonable accommodation. *See Reddick v. Niagara Mohawk Power Co.*, 2010 WL 5185098, at *7 (N.D.N.Y. Dec. 16, 2010) (noting that "[c]ourts holding that excessive absences do not constitute a reasonable accommodation as a matter of law have generally focused [in part] on how frequent the employee was absent.").

Even assuming, however, that Plaintiff was qualified for her position and could otherwise establish her *prima facie* case of discrimination, Defendants argue that Plaintiff's excessive absenteeism constitutes a legitimate non-discriminatory reason for her termination. *See*

17

*Heyman*, 198 F.3d at 72. In this regard, Defendants submitted evidence that Plaintiff's absences negatively impact her colleagues because she is not there to perform required work and "because it forces the [the NYPD] to use other employees to do the work [she] would have done if present." (Ex. M Attached to Defs. MSJ.) Moreover, Defendants note that Assistant Deputy Commissioner Weisel examined Plaintiff's disciplinary record in arriving at his decision to recommend termination, which included the 2005 charges for which Plaintiff was found guilty, as well as two incidents in 1983 and 1992, whereby, respectively, Plaintiff was suspended for twenty days for submitting false medical documentation and forfeited two annual leave days for addressing a police officer in a discourteous and disrespectful manner. (Id.)

Given Defendants' facially non-discriminatory justifications for Plaintiff's termination, the burden again falls to Plaintiff to demonstrate the existence of a material fact as to whether the reason proffered by Defendants is mere pretext for a discriminatory motive. For her part, Plaintiff does not dispute the number of times that she was absent from work or the impact that her absences have on fellow NYPD employees. Nor does she mention, much less address, the earlier disciplinary charges involving her submission of false medical documentation and her disrespectful treatment of a police officer. Instead, she argues that Defendants' motives for denying her FMLA leave must be discriminatory because they ignored a "federal mandate" approving her leave. Plaintiff has misconstrued the record. The federal mandate to which Plaintiff refers is actually a letter sent by Edward Liburd, the wage and hour investigator assigned to conduct an investigation as to whether Schoen's division was in compliance with the FMLA as it applied to Plaintiff. In that letter, Liburd indicated that the "number of leave days [Plaintiff had] taken to date [was] unknown," but noted that "extending the maximum number of days to be taken in a month to five would be appropriate." (Ex. Q Attached to Defs. MSJ.) Given that Liburd did not know how many days Plaintiff had already been absent, however, he made no determination as to whether Plaintiff was either eligible for FMLA leave or entitled to any additional leave, and in fact, Defendants' subsequent investigation revealed that Plaintiff

had not worked the requisite hours required for FMLA leave. (See *id.*; *see also* Exs. T, U, V Attached to Defs. MSJ.) Under these circumstances, Plaintiff has not established that Defendants' reasons for terminating her were a pretext masking discriminatory motives. *See Redman v. New York State Dep't of Corr. Servs.*, 2012 WL 2864502, at *4 (S.D.N.Y. Apr. 30, 2012) (finding no evidence of pretext where defendant-employer terminated plaintiff-employee for excessive absenteeism and disciplinary conduct).

Plaintiff has also alleged that Defendants retaliated against her in violation of the ADA and FMLA. To establish her *prima facie* case of retaliation under the ADA, Plaintiff must establish that: (1) she was engaged in an activity protected by the ADA, (2) the NYPD was aware of that activity, (3) an employment action adverse to her occurred, and (4) there existed a causal connection between her protected activity and the adverse employment action. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). The elements are nearly identical for a retaliation claim under the FMLA, except that instead of demonstrating that her employer was aware of her protected activity, Plaintiff must establish that she was qualified for her position. *See Fischer v. New York City Dep't of Educ.*, 666 F. Supp. 2d 309, 318 (E.D.N.Y. 2009).

In light of its analysis concerning Defendants' legitimate non-discriminatory reason for terminating Plaintiff, the court need not address the specifics of Plaintiff's *prima facie* cases of retaliation under the ADA and the FMLA and will instead assume for present purposes that Plaintiff has established her *prima facie* case for retaliation under both statutes. Nonetheless, as Plaintiff has proffered no evidence to establish that Defendants' termination of her was a pretext for either a discriminatory motive or punishment for requesting FMLA leave, Defendants are entitled to summary judgment on these grounds as well.[7]

---

[7] The court notes that to the extent it discerns from Plaintiff's complaint and papers submitted in opposition to Defendants' motion a claim based on the negative evaluations she received at the Brooklyn Police Tow Pound that provided the impetus for her filing a second OEEO complaint, such claim is without merit. The negative evaluations Plaintiff received at the

## 2. Plaintiff's Title VII Claim

Plaintiff also alleges that she suffered discrimination in violation of Title VII, although there is some question as to whether Plaintiff exhausted this claim before the EEOC. However, as the EEOC indicated in its Dismissal and Notice of Rights that Plaintiff had articulated claims under Title VII and the ADA, the court will deem this claim exhausted. (Ex. II Attached to Defs. MSJ.) But this carries Plaintiff's claim only so far. To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that: (1) she was within a protected group, (2) she was qualified for the functions of her position, (3) she suffered an adverse employment action, and (4) that the action took place under circumstances giving rise to an inference of discrimination. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). At no time before this litigation commenced, however, did Plaintiff indicate that she was discriminated based on her membership in any group entitled to Title VII protections. To the contrary, Plaintiff indicated in her EEOC charge only that she suffered discrimination due to her disability – which is governed by the ADA – and because she was a "civilian member of the [NYPD]," a category of individuals that lies outside the purview of Title VII. (Ex. II Attached to Defs. MSJ); *see also* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination in employment decisions based on "race, color, religion, sex [gender], or national origin."). To be sure, Plaintiff now argues in her opposition to Defendants' motion for summary judgment that she experienced retaliation "based on reverse discrimination" and that "only black and brown supervisors harassed [her]." (Pl. Opp. at 11-13.) Plaintiff does not, however, identify who those supervisors were and indicates that the "harassment" she experienced was that they ignored a federal mandate indicating that

Brooklyn Police Tow Pound played no part in the charges preferred against Plaintiff in her administrative proceeding, or in Assistant Deputy Commissioner Weisel's recommendation to terminate Plaintiff, or in Commissioner Kelly's subsequent decision to order her dismissal. As such, these evaluations, standing alone, are insufficient to provide a basis for relief under any of the statutes Plaintiff cites. *See Mabry v. Neighborhood Defender Serv.*, 769 F.Supp.2d 381, 393 (S.D.N.Y.2011) ("Negative evaluations or reviews, without accompanying tangible harm or consequences, do not constitute materially adverse action altering the conditions of employment").

she was entitled to FMLA leave. And, as discussed, Investigator Liburd's letter did not constitute a mandate to Plaintiff's superiors that she be allowed to take additional FMLA leave and Plaintiff has adduced no evidence that the unnamed supervisors' decision to have her work overtime was in any way connected to or related to Plaintiff's race. *See Leibowitz*, 584 F.3d at 498 (noting that a plaintiff bears the burden to establish that the alleged conduct took place under circumstances giving rise to an inference of discrimination). The court therefore grants Defendants' motion for summary judgment as to Plaintiff's Title VII claim.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Document No. 77) is GRANTED in its entirety. The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and close this case.

SO ORDERED

SANDRA L. TOWNES
United States District Judge

Dated: November 8, 2012
　　　　Brooklyn, New York